**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Brian Thues,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-13-0644-PHX-NVW (JFM)<br><br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 1, 2013 (Doc. 1). On September 3, 2013, Respondents filed their Response (Doc. 10). Petitioner has not filed a reply.

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the evidence at trial as follows:

> On November 8, 2007, several officers and detectives of the Phoenix Police Department conducted surveillance on defendant. During this coordinated surveillance, Detective Geis saw defendant follow an 84-year-old woman, R.B., out of a Walmart parking lot. After R.B. entered her vehicle, Detective B.G. obtained her address

1

from the police dispatcher and drove to her home before defendant arrived. The detective parked his car across the street from R.B.'s home and found a place to hide so that he would be close by if he needed to intervene to protect R.B. The detective waited for the victim to arrive home and observed defendant drive past the victim's house twice. As R.B. was removing groceries from her car, defendant parked his car about three houses down and "ran" to R.B.'s home. Detective Geis attempted to "jump" a fence to prevent defendant from entering R.B.'s home, but was unable to and defendant "went right into the house."

Immediately after defendant entered R.B.'s home, Detective Geis heard a woman scream. The detective ran to the front door as defendant, carrying a "black purse," was "running out the door and [they] collided right at the door's entry." Detective Geis identified himself by yelling "Phoenix Police." Defendant's momentum carried Detective Geis into the front yard where defendant then began punching him in the face. Although the detective identified himself numerous times, defendant continued punching and kicking him. Once other officers arrived, however, they were able to place defendant in handcuffs and under arrest.

At trial, R.B. testified that, on November 8, 20007, after she returned home from shopping, she grabbed a few bags of groceries and her purse and went into her house. She set her grocery bags on the table and turned to go back outside and saw a man she did not recognize "standing [ ] in the middle of [her] living room." R.B. "shook [her] hand at him and [ ] said get out of here; you don't live here." The man grabbed R.B., pushed her to the floor, and punched her. After R.B. fell to the floor, the man "pulled [her] blouse up...over [her] head." R.B. believed the man was going to rape her, but he immediately left. At trial, R.B. identified defendant as the man who accosted her in her home.

(Exhibit H, Mem. Dec. at 3-4.) (Exhibits to the Answer, Doc. 10, are referenced herein as "Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

Petitioner was indicted on one count of burglary, one count of robbery, three counts of aggravated assault (two with regard to the civilian victim and one with regard to the detective), and one count of resisting arrest. (Exhibit A, Indictment.)

Petitioner changed counsel during the course of the prosecution, filed a motion requesting to represent himself, and on the eve of trial expressed dissatisfaction with trial counsel arising out of a disagreement over counsel's reticence to call a particular witness, but Petitioner ultimately withdrew his request. (*See* Exhibit FF, R.T. 7/9/09 at 5-6; Exhibit GG, R.T. 7/13/09 at 3-12.)

2

Petitioner proceeded to a jury trial with counsel, and was found guilty as charged, and the jury found four of five alleged aggravating factors to have been proven. (Exhibit C, M.E. 7/16/09.)

Petitioner was sentenced to concurrent sentences of 20 years on the burglary, 12 years on the robbery, and 4.5 years on each of the two assaults on the civilian victim, and consecutive to those sentences, concurrent terms of 6 years on the assault on the detective and resisting arrest, for an effective combined sentence of 26 years in prison. (Exhibit E, Sentence 1/20/10.)

Some two and a half years later, following direct appeal, and during the pendency of Petitioner's first PCR proceeding, a restitution hearing was held, and various restitution orders made. (Exhibit S, M.E. 8/17/12; Exhibit MM, R.T. 8/17/12.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a Notice of Appeal (Exhibit F).  Counsel was appointed, and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and related state authorities, evidencing an inability to find an issue for appeal.  Counsel did assert that Petitioner wished to raise claims that perjured testimony was presented to the grand jury, and that there was insufficient evidence to support the victim's identification of Petitioner. (Exhibit F. at 18.)

Petitioner was granted leave to file a supplemental brief, but did not do so. (Exhibit H, Mem. Dec. 4/12/11 at 2.)

The Arizona Court of Appeals then reviewed the record for what it alternatively described as "fundamental error" (*id.* at 2) and "reversible error" (*id.* at 7), found none, and affirmed Petitioner's convictions and sentences (*id.* at 8).  In so doing, the court rejected potential claims based upon purported false testimony at the grand jury, and insufficient evidence based upon a conflicting identification of Petitioner by the victim as Hispanic, while Petitioner is African-American.  (*Id.* at 5-7.)

Petitioner did not seek further review.  (Petition, Doc. 1 at 3; Exhibit CC,

3

Appellate Docket.)

### D.  PROCEEDINGS ON FIRST POST-CONVICTION RELIEF

Roughly one month later, Petitioner filed a Notice of Post-Conviction Relief (Exhibit I).  Counsel was appointed (Exhibit J, M.E. 5/19/11), who filed a Notice of Completion of Review (Exhibit K) evidencing an inability to find an issue for review. Petitioner was granted leave to file a *pro per* petition, and counsel was directed to remain in an advisory capacity.  (Exhibit L, M.E. 9/23/11.)

Petitioner filed an extensive Petition (Doc. M), but it was stricken for failure to include the required certification of inclusion of all known grounds for relief, and supporting evidence.  (Exhibit N, M.E. 2/14/12.)  Petitioner was provided leave to file a revised petition, and was provided a form of petition.  (*Id.*)

Petitioner then filed his Amended Petition (Exhibit O)[1], incorporating the form petition, including checked-off claims for relief based on: (1) an identification in violation of constitutional rights; (2) denial of competent counsel; (3) unconstitutional use by the state of perjured testimony.

The PCR court concluded that Petitioner raised five claims:

> The Petition raises five separate claims: (1) the testimony presented to the grand jury was "not limited to factual information" and therefore did not permit the grand jury to resolve the issue of probable cause solely on the facts; (2) the victim's description of her assailant did not support the charges; (3) evidence of "exculpatory" nature was not properly presented at trial; (4) Defendant's "noncriminal movements and travels" were improperly admitted at trial; and (5) Defendant's counsel's representation was ineffective because due to "incompetency," "non-diligence" and/or "mere oversight."

(Exhibit R, M.E. 8/1/12 at 1.)  The PCR court found: (1) the first two claims "precluded under Arizona Rule of Criminal Procedure 32.2(a)(2) because they were raised on appeal and rejected by the Court of Appeals" (*id.*); (2) the portion of claim 2 which asserted a tainted in-court identification, and claims 3 and 4 were precluded under Rule 32.2

---

[1] Petitioner identifies this as his "Second Petition."  (Petition, Doc. 1 at 4.)

4

because Petitioner failed to raise them on direct appeal (*id.* at 1-2).  With regard to the allegation of ineffective assistance, the PCR court found that the claims of ineffective assistance were not colorable claims.  (*Id.* at 2.)  Accordingly, the petition was summarily dismissed.  (*Id.*)

On September 10, 2012, forty days after the dismissal, Petitioner filed a Motion for Clarification (Exhibit T), seeking leave to file a delayed petition for review.  While Respondents note the motion (Answer, Doc. 10 at 7), they do not report any ruling on the motion.  This is concerning, in light of Petitioner's subsequent "Notice of Appeal" (Exhibit W) which the Arizona Court of Appeals apparently construed as related to Petitioner's then pending second PCR proceeding and summarily dismissed as premature. (Exhibit X, Order 11/30/12.)

Petitioner alleges he sought review in both the Arizona Court of Appeals and the Arizona Supreme Court. (Petition, Doc. 1 at 5.)  He references the Arizona Court of Appeals case number assigned to his Notice of Appeal (Exhibit W), "1 CA-CR 12-0734." (Petition, Doc. 1 at 5; Exhibit X, Order 11/30/12.)   He also references Arizona Supreme Court case number "CR 12-0523." (Petition Doc. 1 at 5.)  Respondents have not supplied any records from the latter proceeding.

**E.  PROCEEDINGS ON SECOND POST-CONVICTION RELIEF**

On September 17, 2012, Petitioner filed his second Notice of Post-Conviction Relief (Exhibit U).[2]  Counsel was appointed.  (Exhibit V, M.E. 10/31/12.)  The PCR court noted the prior PCR proceeding and directed that the second proceeding would be allowed "only as to the restitution order issued August 17, 2012." (*Id.* at 1.)

Counsel filed a Notice of Completion of Review (Exhibit Y), reporting an inability to find an issue for review on the restitution proceedings.  Petitioner was granted leave to file a *pro per* petition for post-conviction relief, and counsel was directed to remain in an advisory capacity.  (Exhibit Z, M.E. 12/21/12.)

[2] Petitioner does not report this proceeding in his Petition. (*See* Petition, Doc. 1 at 4-5.)

1    Petitioner failed to file a *pro per* petition, and on April 3, 2013 (during the

2  pendency of this habeas proceeding), the PCR court summarily dismissed the

3  proceeding.  (Exhibit AA, M.E. 4/3/13.)

4    Petitioner did not seek further review.[3]

5

6  **F.  PRESENT FEDERAL HABEAS PROCEEDINGS**

7    **Petition** - Petitioner commenced the current case by filing his Petition for Writ of

8  Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 1, 2013 (Doc. 1).  In the service

9  Order, the Court determined that Petitioner's Petition asserts the following four grounds

10 for relief:[4]

11        In Ground One, Petitioner alleges that his Fourteenth Amendment
         due process rights were violated by the lack of a preliminary hearing
12       and unfair grand jury proceedings. In Ground Two, Petitioner
         alleges that he received the ineffective assistance of counsel in
13       violation of his Sixth Amendment rights. In Ground Three, he
         alleges a Fifth Amendment Double Jeopardy violation. In Ground
14       Four, he alleges structural error based on the jury instructions used.

15 (Order 6/12/13, Doc. 4 at 2.)

16    **Response** - On September 3, 2013, Respondents filed their Response ("Answer")

17 (Doc. 10).  Respondents argue that Ground One (Preliminary Hearing) asserts a state law

18 claim and is not cognizable on habeas review, and is procedurally defaulted.  (*Id.* at 8, et

19 seq., 13-14)   Respondents argue that Ground Two (Ineffective Assistance) contains

20 insufficient allegations to adequately state a claim, is without merit, and is procedurally

21 defaulted. (*Id.* at 9-10, 14-16.)   They argue that Ground Three contains insufficient

22 allegations to adequately state a claim, and is procedurally defaulted. (*Id.* at 9-10, 16.)

23 Finally, they argue that Ground Four is without merit and is procedurally defaulted.  (*Id.*

24 at 16-20.)

25

26 [3] The trial court's docket reflects transmittals and an order from the Arizona Court of
   Appeals on April 5, 2013.  (Exhibit BB at 1.)  However, these were filed only a day after
27 the dismissal of the PCR proceeding, creating the inference that they related to earlier
   proceedings, not any attempt to seek review on Petitioner's second PCR proceeding.
28 [4] As discussed hereinafter, the undersigned has concluded that Ground Three also asserts
   a related claim of prosecutorial misconduct.

**Reply** – In an Order filed by Judge Logan on October 8, 2013, Petitioner was given until November 6, 2013 to reply in support of his petition.

No reply has been filed.

### III. APPLICATION OF LAW TO FACTS

### A.  GROUND ONE: DENIAL OF PRELIMINARY HEARING

In his Ground One, Petitioner asserts a "14th Amendment violation (Due Process)," and makes the following allegations:

> Due process is best defined in one word – fairness.  Petitioner contends that he never waived his right to a preliminary hearing as required by the rules of criminal procedure.  The contaminated evidence had an obvious affect [sic] on judgment at the trial and grand jury proceedings.  In essence, the right of an accused in a criminal trial to due process is the right to a fair opportunity to defend against the accusations of the prosecutor and to present a complete defense.  Petitioner contends that he was given less than an indigent defense.

(Petition, Doc. 1 at 6.)

Respondents construe this ground as asserting a claim that Petitioner's due process rights were violated because he was not provided with a preliminary hearing as required by state law.  (Answer, Doc. 10 at 8-9.)  (Respondents contend, however, that state law did not actually require a preliminary hearing.  (*Id.* at 9, n.3.)

### 1.  Cognizable Claim of Due Process Violation

Respondents properly note that review in a federal habeas proceeding is limited to federal violations.  A state prisoner is entitled to habeas relief only if he is "in custody in violation of the Constitution, laws or treaties of the United States." 28 U.S.C. § 2254(a).  Federal habeas relief is not available for alleged errors in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Middleton v. Cupp*, 768 F.2d 1083 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986).

Moreover, a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389

(9th Cir. 1996).  It has long been understood that a state may violate its own law without violating the United States Constitution.  "We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."  *Gryger v. Burke*, 334 U.S. 728, 731 (1948).

But, that is not to say that an error of state law can never result in a denial of due process.  The standard, however, is high.  To qualify for federal habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment."  *See Pully v. Harris*, 465 U.S. 37, 41 (1984). To sustain such a due process claim founded on state law error, Petitioner must show that the state court "error" was "so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir.1986)).  To receive review of what otherwise amounts to nothing more than an error of state law, a petitioner must argue "not that it is wrong, but that it is so wrong, so surprising, that the error violates principles of due process"; that a state court's decision was "such a gross abuse of discretion" that it was unconstitutional.  *Brooks v. Zimmerman*, 712 F.Supp. 496, 498 (W.D.Pa.1989).

In evaluating Petitioner's Petition, the Court must construe the allegations liberally.  *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003).  The undersigned finds Respondents' construction of Ground One to be a liberal construction, insofar as it goes. What Respondents do not do is grant Petitioner the liberality of reading his assertions that he was denied "a fair opportunity to defend against the accusations of the prosecution" (Petition, Doc. 1 at 6) as an allegation that the error was so egregious that it amounted to a violation of due process.  So read, Petitioner's Ground One states a cognizable federal claim.

That, of course, does not mean that Petitioner has established such a violation.

//

### 2.  No Preliminary Hearing Requirement

Petitioner contends that state law required a preliminary hearing.  To the contrary, under the Arizona Constitution either indictment by a grand jury or information after a preliminary hearing is a proper method of bringing an accused felon to trial. *State v. Bojorquez*, 111 Ariz. 549, 553, 535 P.2d 6, 10 (1975); Ariz. Const. art. 2, § 30 ("[n]o person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment.").

Here, Petitioner was prosecuted by a grand jury indictment (Exhibit A).  Thus, no preliminary hearing was required under Arizona state law. Accordingly, there was no violation of state law as a result of the absence of a waiver by Petitioner of a preliminary hearing.

Moreover, federal law does not mandate both a grand jury indictment and a preliminary hearing.  In *Howard v. Cupp*, the Ninth Circuit rejected an argument that a petitioner had been denied equal protection because he had been prosecuted in the state of Oregon by grand jury indictment rather than preliminary hearing.  747 F.2d 510 (9th Cir. 1984).  "It is well settled, however, that there is no fundamental right to a preliminary hearing." *Id.* at 510.

Of course, here Petitioner asserts not an equal protection violation, but a denial of due process, as a result of the resulting impact on his ability to defend himself at trial. The Sixth Circuit has plainly held that there is no due process right, or any other constitutional right, to a preliminary hearing. *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 196) (reviewing Supreme Court and other circuit cases).

Moreover, the Ninth Circuit's conclusion in *Howard* that there was no equal protection right to a preliminary hearing was drawn from *Austin v. U.S.*, 408 F.2d 808 (9th Cir. 1969), which in turn relied upon *Sciortiono v. Zampano*, 385 F.2d 132, 134 (2nd Cir. 1967), *cert denied* 390 U.S. 906 (1968).  In *Sciortiono*, the federal defendant argued that the preliminary hearing "provided by Rule 5(c) of the Federal Rules of Criminal Procedure is intended to serve as a means of discovery for the accused as well as a forum

for determining probable cause, so that the need for such an examination is not eliminated by the return of an indictment." 385 F.2d at 133. After noting the principle that the finding of probable cause in an indictment "eliminates the need for a preliminary examination," *id.*, the court concluded that allowing a defendant to prepare for trial by using the preliminary hearing as a means of conducting discovery, was not the purpose of a preliminary hearing.

Thus, the only purpose to be served by a preliminary hearing is to preserve the protection of a finding of probable cause before the maintenance of a prosecution. Petitioner was afforded such protection by the grand jury indictment process.

**3.  Any Error Harmless**

Assuming there were any defect in failing to provide Petitioner with a preliminary hearing, such error was rendered harmless by his conviction at trial.   In *U.S. v. Mechanik*, 475 U.S. 66, 70 (1986), the Court rejected a challenge to procedures at a grand jury proceeding, where the defendant had been convicted at trial.   The Court reasoned: "the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings."  475 U.S. at 73.

Similarly here, any error in not having a preliminary hearing was rendered harmless when the trial jury's verdict established that there was not only probable cause to believe Petitioner had committed the offenses, but proof beyond a reasonable doubt.

**4.  Summary**

Liberally construed, Petitioner's Ground One does assert a cognizable claim of a denial of due process.  That claims is without merit, however, because Petitioner had no state or federal right to a preliminary hearing, and any error in failing to provide such a

hearing was harmless.  Accordingly, Ground One must be denied.

## B.  FAILURE TO ADEQUATELY STATE A CLAIM

Respondents contend that Petitioner fails to adequately state claims in his Grounds Two and Three.[5]  (Answer, Doc. 10 at 9-11.)

### 1.  Applicable Standard

"Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and 'state the facts supporting each ground.'"  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  Conversely, a habeas petition cannot rest on allegations that are "conclusory and wholly devoid of specifics," which "are no substitute for proper allegations of fact."  *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970).  "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

While a pleading may be dismissed for failure to state a claim, that dismissal is ordinarily made without prejudice, and with leave to amend.  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  That principle flows from the mandate in Federal Rule of Civil Procedure 15 that leave to amend "shall be freely given when justice so requires."  *Id.* at 1051.

The amendment of habeas petitions is governed by the "rules of procedure

---

[5] The undersigned presumes without deciding, that the Court's recitation in the service Order (Doc. 4) of the claims asserted in the Petition does not equate to a finding that the identified claims have been adequately stated.  To the extent that such Order does constitute such a finding, this discussion about the failure to adequately state a claim would be moot, the earlier ruling serving as the law of the case.

applicable to civil actions."  28 U.S.C. § 2242.  This includes Federal Rule of Civil Procedure 15.  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Thus, in deciding whether to dismiss a habeas petition with or without prejudice for failure to state a claim, this Court is required to "consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice."  *Eminence Capital*, 316 F.3d at 1052.

## 2.  Application to Grounds Two and Three

**Ground Two** – In his Ground Two, Petitioner asserts a claim of ineffective assistance of counsel in violation of the Sixth Amendment.  The approved form of Petition then requires and instructs: "Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.)" (Petition Doc, 1 at 7.)  Petitioner then recites the following:

> Either ineffective assistance occurred or it didn't, because all trial lawyers make major mistakes on every trial. Although the right to ineffective assistance of counsel does not require a criminal defendant's attorney to leave no stone unturned or any witness unpursued [sic], it is axiomatic that a failure to call a particular witness to the stand and pursue a particular line of defense may be so inept that it demonstrates an unreasonable choice of how to conduct a proper defense. Here, Petitioner contends that ineffective assistance occurred from the beginning of the case during grand jury proceedings and was in need of a defense that would bring every factor into play as to avoid the ultimate punishment he has been presented with. Further, when an attorney fails to be an adversary to the State, that attorney constructively denies counsel to his or her client.

(Petition, Doc. 1 at 7.)    Respondents argue that this is nothing more than "general principles and assertions" and fails to provide "specific instances of counsel's conduct."

(Answer, Doc. 10 at 10.)

Indeed, the bulk of this recitation is simply generic assertions of legal principles. The only plainly factual allegation is the assertion that "ineffective assistance occurred from the beginning of the case during grand jury proceedings." Liberally construed, this adequately asserts a claim that Petitioner was denied effective assistance of counsel in the grand jury proceedings.

It is true, as discussed hereinafter, that there is no constitutional right to counsel in grand jury proceedings, and thus this claim is without merit. That the claim is without merit does not establish that it is not adequately stated – the issue is not a defect in pleading, but a defect in the legal premise. Such a defect cannot be cured by additional facts, but requires the assertion of a different claim. Accordingly, a denial of the defective claim, rather than dismissal with leave to amend the pleading, is the appropriate remedy.

The remainder of that sentence ("Petitioner…was in need of a defense that would bring every factor into play") and the reference in the next sentence about counsel failing "to be an adversary to the State," assert a claim under *United States v. Cronic*, 466 U.S. 648 (1984) that counsel failed to mount a defense. Because a claim that counsel failed to mount a defense is an assertion of a negative, further specifics are often unnecessary to adequately state the claim.

As an alternative to the claims that Ground Two fails to adequately state a claim, Respondents contend that the Ground at best asserts a claim comparable to that in Petitioner's PCR petition that "defense counsel was incapable of exploring all facts of evidence and positions of defense either due to incompetency, nor diligence to the case or mere oversight. Regardless, it rendered defense counsel inadequate and ineffective to defend or even to intelligently advise the defendant." (Answer, Doc. 10 at 14-15 (quoting Exhibit M, PCR Petition at 2.) That sweeping allegation is the essence of a *Cronic* claim.

Thus, liberally construed, the undersigned finds that Ground Two adequately

states claims that Petitioner was denied effective assistance of counsel in the grand jury proceedings, and that trial counsel failed to mount a defense.  These claims will be addressed on their merits hereinafter.

**Ground Three** – In his Ground Three, Petitioner asserts claims of double jeopardy and prosecutorial misconduct as an "infraction" of the Fifth Amendment. (Petition Doc. 1 at 8.)

> This case was a quasi stacked case, because the State implied that Petitioner was under surveillance and that numerous charges were gonna be filed to circumvent his safeguarded rights. Before a trial court can admit evidence of other acts, the court must find clear and convincing evidence that Petitioner had committed the act. The mother of all evil is speculation and the double counting of all enumerated factors, that were elements of conviction, has double jeopardy at bar. A claim of prosecutorial misconduct warrants reversal only if #1) misconduct is indeed present and #2) a reasonable likelihood that the misconduct could have affected the jury's verdict, thereby denying the Petitioner a fair trial. The facts in supporting facts shows ill will and egregious behavior that warrants censorship. Because the double jeopardy clauses of both constitutions have been held to protect against three distinct abuses: #1) a second prosecution for the same offense; #2) a second prosecution for the same offense following a conviction and multiple punishments for the same offense in violation of A.R.S. § 13–116.

(*Id.*)

Respondents again argue that this Ground "simply asserts constitutional principles without explaining how those principles were violated." (Answer, Doc. 10 at 11.)

However, liberally construed, Petitioner asserts claims that he was subjected to double jeopardy because there was an implication by the prosecution that other charges were going to be filed against him and that he had been under surveillance, and that such implication amounted to prosecutorial misconduct. Again, while these claims are without merit, that does not establish that they are not adequately stated.  Rather, they simply do not merit relief.  Thus, it is appropriate to dispose of these claims on their merits rather than dismissing them with leave to amend.

These claims will be addressed on their merits hereinafter.

**C.  PROCEDURAL DEFAULT**

Respondents contend that Grounds Two, Three and Four are procedurally defaulted.

**1.  Discretion to Deny on Merits in the Face of Procedural Default Defense**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Similarly, "absent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

However, 28 U.S.C. § 2254(b)(2) provides:  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Accordingly, the court is free to side step the exhaustion issue when it is more efficient or easier to dispose of a claim on its merits. *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999).  That exception only applies in limited circumstances where the petitioner has no hope of prevailing on the merits of his claim.  "[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable

1   federal claim." *Cassett v. Stewart*, 406 F.3d 614, (9th Cir. 5/3/5).

2          Although § 2254(b)(2) speaks in terms of a "failure to exhaust" and procedurally

3   defaulted or procedurally barred state remedies have been technically exhausted, at least

4   some courts have read 28 U.S.C. § 2254(b)(2) as authorizing the avoidance of a

5   procedural default  or procedural bar analysis in favor of a rejection on the merits.

6   "Thus, although 28 U.S.C. § 2254(b)(2), which provides that '[a]n application for a writ

7   of habeas corpus may be denied on the merits, notwithstanding the failure of the

8   applicant to exhaust the remedies  available in the courts of the State,' is not in terms

9   applicable to procedural defaults we see no reason why we should not act consistently

10  with that section when there is a possible procedural default." *Hameen v. State of*

11  *Delaware*, 212 F.3d 226, 251-52 (3rd Cir. 2000).  "The U.S. Supreme Court has held that

12  federal courts are not required to address a procedural-default issue before deciding

13  against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)

14  (citing *Lambrix v. Singletary,* 520 U.S. 518, 525  (1997)).  *See also Nobles v. Johnson*,

15  127 F.3d 409, 423-24 (5th Cir.1997) (deciding against the petitioner on the merits even

16  though the claim was procedurally defaulted); *Miller v. Mullin*, 354 F.3d 1288, 1297

17  (10th Cir.2004) ("In the interest of judicial economy, [w]e need not and do not address

18  these issues, however, because the case may be more easily and succinctly affirmed on

19  the merits." (internal quotation marks omitted; modification in original)); *Wilson v.*

20  *Ozmint*, 352 F.3d 847, 868 (4th Cir.2003) (declining to decide the case on the basis of a

21  procedural bar never raised by the state when the merits could be easily disposed of

22  against the petitioner); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir.1999) (seeing

23  no need to "belabor" the "difficult question" of a procedural bar when the claim was

24  easily resolvable against the petitioner on the merits).

25          In *Lambrix* (relied upon by the Sixty Circuit in *Hameen*) the Supreme Court held

26  that a *Teague* question could be addressed on its merits despite the assertion of a

27  procedural default defense.

28          A State's procedural rules are of vital importance to the orderly

administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system. We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving the Teague question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law. Cf. 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

*Lambrix*, 520 U.S. at 525.

The Ninth Circuit similarly relied on *Lambrix* to find that the appellate court could dispose of a claim on its merits despite the applicability of a procedural bar. "We do agree, however, that appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar. Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same." *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) (internal citations and quotations omitted). *See Flournoy v. Small*, 681 F.3d 1000, 1004, n.1 (9th Cir. 2012) (relying on *Franklin* to address merits despite allegation of procedural default).

Based on the foregoing, the undersigned concludes that, if Petitioner's claims are plainly without merit, if "it is perfectly clear that the applicant does not raise even a colorable federal claim," then notwithstanding any allegation or appearance of procedural default or procedural bar, this Court may, in the interests of judicial economy, dispose of the claims on the merits.

**2.  Reasons to Exercise Discretion to Deny on Merits**

Here, resolving the exhaustion, procedural default, and procedural bar issues raises a number of thorny problems.

First, in addressing Petitioner's direct appeal following an *Anders* brief, the Arizona Court of Appeals initially reported that its task was to search the record for

"fundamental error," a limited type of error.  (Exhibit H, Mem. Dec. at 2.)  *Anders* directs a court faced with appointed counsel's failure to make arguments for relief "to decide whether the case is wholly frivolous,"  *Anders,* 386 U.S. at 744, which requires an unrestricted review for viable claims.  It is true that the Arizona court later in its decision identified its task as a search for any "reversible error."   However, there is nothing explicit in the decision to clarify which of the two standards was actually applied. This distinction might affect a finding of exhaustion or cause and prejudice.

Second, Petitioner appears to have attempted to seek review in his first PCR proceeding, but was thwarted by the PCR court's apparent failure to address his request to extend the time for a petition for review (*see* Exhibit T, Motion for Clarification), and the appellate court's construction of his "notice of appeal" as being related to his second PCR proceeding and thus summarily dismissing it (Exhibit X, Order 11/30/12).  These matters raise questions about the availability of the state remedies to Petitioner and/or cause and prejudice to excuse his procedural default.

Third, the lack of specificity in Petitioner's Grounds for Relief would require the Court to make assumptions about the claims he asserts in order to ascertain whether those claims had been presented at a particular stage of the state proceedings.

Fourth, although curable through further proceedings to expand the record, the record provided to date is incomplete. Exhibit O to the Limited Answer is Petitioner's Amended Petition in his first PCR proceeding.  The petition asserts that the facts in support of the petition "are contained in Attachment A," (*id.* at ¶ V), and that a series of exhibits are attached (*id.* at ¶ VI). No attachments or exhibits are included in the copy filed with the Court.  Exhibit P to the Limited Answer is the State's responsive brief in Petitioner's PCR proceeding.   The copy filed with the Court ends abruptly at page 6. Petitioner alleges he sought review in both the Arizona Court of Appeals and the Arizona Supreme Court. (Petition, Doc. 1 at 5.)  He references the Arizona Court of Appeals case number assigned to his Notice of Appeal (Exhibit W), "1 CA-CR 12-0734."  (Petition, Doc. 1 at 5; Exhibit X, Order 11/30/12.)   He also references Arizona Supreme Court

case number "CR 12-0523." (Petition Doc. 1 at 5.)  Respondents have not supplied any records from the latter proceeding.

Finally, although again curable through supplemental briefing, Respondents failure to discern the claims identified herein renders their arguments on the exhaustion issues incomplete.  While it is true that Petitioner has failed to affirmatively assert any claim to the Arizona Court of Appeals (on direct appeal or in a PCR proceeding), Respondents have not addressed whether the claims discerned herein were raised to the PCR court and disposed of on independent and adequate state grounds, or potentially the subject of Petitioner's apparently thwarted attempts at seeking review.

As discussed hereinafter, the undersigned concludes that Petitioner's Grounds Two, Three, and Four fail to raise even a colorable federal claim.  Accordingly, for the reasons discussed above, the undersigned will proceed to the merits of these claims despite the assertion or appearance of a procedural default  or procedural bar defense.


**D.  MERITS OF GROUND TWO: INEFFECTIVE ASSISTANCE**

The undersigned has found that, liberally construed, Ground Two asserts claims that Petitioner was denied effective assistance of counsel in the grand jury proceedings, and that trial counsel failed to mount a defense.


**1.  Standards of Review**

While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** - Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence. There is a well-established presumption of correctness of state court findings of fact. This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court." Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply. *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013). *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

## 2.  Standards for Ineffective Assistance Claims

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim,

petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id*. at 697.

In determining whether counsel performed deficiently, the court must focus on whether the attorney's actions were appropriate under the circumstances existing at the time. *See Strickland*, 466 U.S. at 690. Moreover, there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy. *United States v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *United States v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### 3. Ineffectiveness at Grand Jury Proceedings

Petitioner asserts he was denied effective assistance of counsel in the grand jury proceedings. However, "[w]here a defendant does not have a constitutional right to counsel, he cannot raise an ineffective assistance claim." *U.S. v. Mathisen*, 103 F.3d 142 (9th Cir. 1996). "[A] person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *U.S. v. Gouveia*, 467 U.S. 180, 187 (1984). Thus, there is no right to counsel in a grand jury proceeding. *U.S. v. Hayes*, 231 F.3d 663, 673-674 (9th Cir. 2000). Consequently, Petitioner has no basis to assert a claim of ineffective assistance of

counsel at the grand jury, and this portion of Ground Two is plainly without merit and must be denied.

### 4. Failure to Mount a Defense

Petitioner asserts that counsel failed to mount a defense of his case.

Such claims are a unique breed of ineffectiveness claim. On the same day that *Strickland* was handed down, the Supreme Court also established an exception to the deficient and prejudicial performance standard by holding that certain circumstances in a criminal trial are so likely to prejudice the accused that no actual showing of prejudice need be made; ineffective assistance is presumed. *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Court identified two circumstances as being presumably prejudicial: the accused being denied criminal counsel at a critical stage of his trial or counsel entirely failing to subject the prosecution's case to meaningful adversarial testing. 466 U.S. at 659.

The only time Petitioner asserts he was denied all counsel was at the grand jury. But as discussed herein above, he had no right to counsel at that point in the proceeding.

The Ninth Circuit has interpreted the second alternative under *Cronic* as applying only "where there has been an actual breakdown in the adversarial process at trial." *Toomey v. Bunnell*, 898 F.2d 741, 744 n. 2 (9th Cir.), *cert. denied*, 111 S.Ct. 390 (1990). The Circuit has found such a breakdown and presumed prejudice to result when: (1) defense counsel has conceded that there is no reasonable doubt concerning the only factual issues in dispute, *United States v. Swanson*, 943 F.2d 1070, 1073 (9th Cir.1991); (2) when counsel has slept through a portion of the trial, *Javor v. United States*, 724 F.2d 831, 834-35 (9th Cir.1984); or (3) counsel has uttered racial epithets at his client and threatens to be very ineffective if he insists on going to trial, *Frazer v. United States*, 18 F.3d 778, 785 (9th Cir.1994).

On the other hand, while complete failure to defend a criminal case is ineffective assistance, the constitution does not require counsel to manufacture a defense where

none exists. *See U.S. v. Hamilton*, 792 F.2d 837 (9th Cir. 1986). The sixth amendment does not require counsel to invent a defense." *Haynes v. Cain*, 272 F.3d 757, 764 (5th Cir. 2001), *rehr'g granted on other grounds* 284 F.3d 604 (5th Cir. 2002).

Here, Petitioner fails to show that trial counsel failed to mount a defense.  To the contrary, trial counsel: negotiated limitations on evidence of Petitioner's prior convictions (Exhibit FF, R.T. 7/9/09 at 5-6); negotiated for and argued for limitations on evidence of Petitioner being a suspect in other robberies and being under surveillance (*id.* at 14-18); conducted voir dire of the jury panel (*id.* at 83-89); sought the striking of jurors for cause (*id.* at 98-99); cross examined all but two of the prosecution's witnesses (Exhibit HH, R.T. 7/14/09 at 27, 41, 77, 107, 130, 143; Exhibit II, R.T. 7/15/09 at 22, 35, 37); objected to proposed jury instructions (Exhibit II, R.T. at 39, *et seq.*); made several motions for a directed verdict (*id.* at 44,  *et seq.*); presented closing arguments that the prosecution had failed to meet its burden of proof (*id.* at 90, *et seq.*); asserted objections to the prosecution's rebuttal argument (*id.* at 108); opposed the prosecution's objections to the defense's closing argument (*id.* at 123); opposed the aggravating factors (Exhibit JJ, R.T. 7/16/09 at 3); requested polling of the jury (*id.* at 6); presented closing arguments on the aggravating factors (*id.* at 21); objected to evidence at the sentencing hearing (Exhibit KK, R.T. 12/9/09 at 8, 17); cross examined witnesses at sentencing (*id.* at 15, *et seq.*, 20 *et seq.*); argued against a finding of some of the prior convictions (*id.* at 23, *et seq.*), opposed evidence at sentencing of uncharged conduct (Exhibit LL, R.T. 1/20/10 at 4); presented statements of Petitioner's brother, mother  (*id.* at 18, *et seq.*); and argued for a reduced sentence (*id.* at 26, *et seq.*).

Petitioner points to nothing further that counsel should have done.  To be sure, he does generically reference failures by attorneys to call witness or to pursue particular lines of defense, or to make reasonable choices how to conduct the defense.  (Petition, Doc, 1 at 7.)  Petitioner proffers nothing, however, to show that any such witnesses, defenses, or choices in how to defend the case existed in this matter.

In sum, Petitioner fails to show that counsel did not mount a defense.

1    Accordingly, this portion of Ground Two is also without merit.

2          Accordingly, Ground Two is plainly without merit, and must be denied.

3

4    **E.  MERITS OF GROUND THREE: DOUBLE JEOPARDY / MISCONDUCT**

5          Liberally construed, Petitioner's Ground Three asserts claims that he was

6    subjected to double jeopardy because there was an implication by the prosecution that

7    other charges were going to be filed against him and that he had been under surveillance,

8    and that such implication amounted to prosecutorial misconduct.

9          At a pretrial status conference, the parties discussed other charges against

10   Petitioner then pending before the grand jury.  (*See* Exhibit DD, R.T. 7/11/08 at 3, 10.)

11   Those discussions were held before the jury was called, and were not instigated by the

12   prosecution, but by the defense.

13         At trial, the prosecutor related to the court that "at the time this incident occurred,

14   this defendant was an identified suspect in several other robberies, and the police were

15   actually doing surveillance on the defendant that particular day when they observed these

16   actions."  (Exhibit GG R.T. 7/13/09 at 14.)  It was part of a discussion with the trial court

17   to obtain a ruling on the exclusion of such testimony.  The trial court ultimately ruled:

18              THE COURT: I am going to permit the state to introduce
            testimony that they were following the defendant for another lawful
19          purpose, and I am going to make a finding that the events of that
            specific day which do not include other crimes are admissible, in
20          that the prejudice to the defendant does not outweigh the relevance.

21   (*Id.* at 17-18.)  This occurred prior to the jury panel entering the courtroom.  (*See id.* at

22   18.)

23         In opening statements, the prosecution related, *inter alia*, that "officers and

24   detectives with the Phoenix Police Department were doing surveillance, and they were

25   doing surveillance on the defendant, Brian Thues, for another lawful purpose."  (Exhibit

26   HH, R.T. 7/14/09 at 5.)

27         At trial, Officer Miranda testified to the surveillance:

28              Q. And what was your purpose? What were you doing that

24

day?
     A. We were conducting surveillance, Officer Jarvis and I, in particular in the southwest corner of 7th Avenue and Osborn.
     Q. And were you doing surveillance on a particular person that day?
     A. Yes, we were.
     Q. And was that person an individual by the name of Brian Thues?
     A. Yes, it was.
     Q. And had you been shown a photograph of that person prior to doing surveillance?
     A. I had been shown at least two photographs prior.

(Exhibit HH, R.T. 7/14/09 at 18.) Miranda described following Petitioner in his vehicle from that location, a grocery store, to a WalMart parking lot, to a private residence, back to the WalMart, to a second private residence, to the WalMart a third time, and then to a third residence where Petitioner was being arrested by other officers. (*Id.* at 18-25.)

Other officers offered similar testimony (albeit from their own viewpoints), including Officer Jacobs (*id.* at 33-39), Officer Ferencik (who added testimony suggesting that Petitioner appeared to be following vehicles to the other residences) (*id.* at 48-58), Officer Adams (*id.* at 66-75), Officer Geis (*id.* at 84-86), and Officer Collard (*id.* at 124).

In closing arguments, the prosecution again referenced that the officers were "doing surveillance on that day." (Exhibit II, R.T. 7/15/09 at 74.) The prosecution further argued:

> There are lots of things the state does not have to prove. The only things that the state does have to prove are the actual elements of the offenses. For example, if you were wondering why were the police doing surveillance that day, that is not an element of the offense, of any of the offenses.

(*Id.* at 80.) The prosecutor further argued:

> Another important point I want to make, I know you heard a lot of testimony about the officers doing surveillance starting in the area of 7th Avenue and Osborn and watching the defendant drive in those parking lots and then driving around Spectrum Mall and going to some different homes before he went to Mrs. Butler's. I just want to be clear that the state is not suggesting that the defendant was committing any crimes when he was driving around in that fashion.
> When he followed those other drivers to Yucca and Rovey, the state is not suggesting that he was committing crimes, but we have the officers tell you about that to show you a few different things. One would be the defendant's intent that day when he did

finally arrive to Mrs. Butler's residence, his single-mindedness into getting into Mrs. Butler's home and put into much better perspective when you hear about his behavior at the two previous residences and what occurred. The officers' concerns based on what they had observed of the defendant's actions that day. It places their actions into some better context for you when you know what they had already observed that day the defendant doing.

(*Id.* at 81-82.)

In rebuttal, the prosecutor argued:

The police were following a black man around Phoenix. Now, is defense trying to make that sound as ugly as possible? That's an improper argument since we already said that you are not told why the police are doing surveillance and why not? Because it's not relevant to your determination of the facts as far as these charges, but to suggest that perhaps they're just following him around because of his race or any other improper purpose certainly is not a proper argument to make.

(*Id.* at 113.)

At sentencing Officer Geis asked to address the trial court as a victim.  Defense counsel addressed the other conduct issues:

MR. SCHWARTZSTEIN: Judge, before we begin, I was wondering -- I want to be sure -- I know Officer Geis is well informed of this case and the facts as part of his investigation. I just want to make sure that we're not going to be discussing any uncharged cases or any unsolved cases or anything of that nature. I don't believe it is appropriate under the circumstances.

THE COURT: I understand your concern. I can put in context anything Officer Geis tells me with respect to any other cases. I am sure he will give me input on this case. So, Officer Geis, come up here.

(Exhibit LL, R.T. 1/20/10 at 4.)

Officer Geis stated:

I was asked to assist officers in conducting surveillance on Mr. Thues, believing he was involved in some criminal activity. As I followed Mr. Thues along with the other officers, we followed Mr. Thues and watched him follow one woman to her house, where his intentions -- he was unable to follow through on his intentions due to the fact that she was able to get in her garage and shut the garage door. There was a second woman that he went back to a shopping mall and followed from there to 19th Avenue and Bethany. He methodically chose his victims by driving up and down the parking lot of the shopping mall looking for someone who he believed could be a victim. As I watched Mr. Thues do this, I was sick to my stomach, believing it could be my mother or grandmother that he is basically hunting or targeting to be a victim.

I followed Mr. Thues as he followed the second woman to

her townhome and the only reason his intentions were thwarted on that occasion was that a neighbor had come out and greeted the elderly woman. Therefore, he was unable to follow through on those intentions. The third woman I observed Mr. Thues target was Mrs. Butler over at 17th Avenue and Bethany Home Road in a shopping mall. I watched him as he saw her, target her and began to follow her all the way home to her address.

(*Id.* at 5-6.)

## 1.  Double Jeopardy

The Fifth Amendment to the U.S. Constitution provides that no person shall "be subject to the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. In *Benton v. Maryland*, 395 U.S. 784 (1969) the Supreme Court held that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment.

The Double Jeopardy Clause incorporates four separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 306- 07 (1984) (citing *Illinois v. Vitale*, 447 U.S. 410, 415 (1980)); *see United States v. Brooklier*, 637 F.2d 620, 621 (9th Cir.), *cert. denied* 450 U.S. 980 (1980).   The Double Jeopardy Clause also incorporates the concept of criminal collateral estoppel, barring a subsequent prosecution dependent upon "an issue of ultimate fact [that] has once been determined by a valid and final judgment" in the defendants' favor in an earlier prosecution.  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

Here, Petitioner does not assert that he was tried in consecutive trials for the same offense, either after an acquittal or a conviction.  Nor does he allege that he was punished twice for the same offense.  Nor does he allege that some ultimate fact at issue in this case had been decided in his favor in an earlier proceeding, or that one decided in the instant proceeding was again raised in a subsequent one.

At best, Petitioner complains that information was presented in this proceeding

was suggestive of his commission of other crimes.  Such evidence is not without its constitutional infirmities.  *See e.g. Alberni v. McDaniel*, 458 F.3d 860, 865 *et seq.* (9th Cir. 2006) (discussing due process concerns from evidence of other crimes).  But a violation of Double Jeopardy is not one of them.

## 2.  Prosecutorial Misconduct

Petitioner asserts that the implication by the prosecution that other charges were going to be filed against him and that he had been under surveillance amounted to prosecutorial misconduct.  Prosecutorial misconduct which "rises to the level of a due process violation" may justify habeas relief.  *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).  To make out such a claim, a Petitioner must show that: (1) the prosecutor's conduct was improper; and (2) that the impropriety substantially prejudiced the defendant.  *U.S. v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011).  *See also Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008) (applying standard to prosecutorial misconduct based on prior bad acts evidence).

Here the only reference to other charges occurred outside the presence of the jury, and thus was harmless.

Moreover, while the trial was replete with references to Petitioner being under surveillance, the prosecution and its witnesses were circumspect in adhering to the trial court's ruling that no testimony be presented about the purpose for the surveillance.  "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings."  *Cristini*, 526 F.3d at 900.

It is true that testimony of Petitioner being under surveillance created an inference of other wrongdoing, with the risk of an implication that guilt of the charged offense could in turn be inferred.  However, such evidence may properly be admitted if, for example, it is admitted for another proper purpose, e.g. to establish "motive, opportunity, preparation, plan," etc.  *See* e.g. Fed. R. Evid. 404(b)(2).  Moreover, such evidence may be admitted when it is "inextricably intertwined" with the charged offense.  *U.S. v.*

*Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995).  Such evidence may be properly introduced "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime."  *Id.* at 1012-1013.

Here, the nature of Petitioner's movements prior to his assault on the victim established his preparation, planning and intent to undertake the robbery.  Further, the extremely limited testimony about the surveillance was necessary to explain to the jury why six officers were engaged in testifying about those movements, and why Petitioner was apprehended as he exited the civilian victim's residence.  Thus, the introduction of testimony and arguments about the surveillance was not improper, and thus does not support a claim of prosecutorial misconduct.

Even if this Court could conclude that the prosecutor acted improperly, there is no likelihood that the misconduct had a prejudicial effect on the outcome.  The evidence against Petitioner was plainly overwhelming.  He was caught "redhanded and in the fact."  Sir Walter Scott, *Ivanhoe*, Chapter 25 (describing the capture of a deer poacher).  Or,  in this case, Petitioner was caught purse-handed.

Petitioner's claims of prosecutorial misconduct are without merit.

Therefore, Ground Three is plainly without merit and must be denied.


**F.  MERITS OF GROUND FOUR: JURY INSTRUCTIONS**

Finally, in Ground Four, Petitioner alleges structural error based on the jury instructions used.  In support of this claim, he asserts the following:

> Structural error has been defined as error that affects the basic framework within which the trial proceeds rather than simply an error in the trial itself.  Forcing Petitioner to proceed to a trial in which his interests are not vigorously advocated by an able lawyer and [without?] a safeguarded right such as a guaranteed preliminary hearing or an unbiased judge is of course structural error.  Although structural error is impossible to quantify and [defies?] analysis by a

> harmless error standard.  The lack of correct jury instructions, such as the presumption of innocence lasts throughout the trial can't be [treated?] as obsolete.  It is self evident that jurors are highly unlikely to remain impartial after hearing evidence that misleads them to believe that releasing this prisoner would mean releasing a dangerous person.  Guilt can not be established by a defendants mere presence at a crime scene and the jury was placed in a predicament in which they could only come to one conclusion (*Portillo*) and (*Le-Blanc*) are   reasonable doubt instructions that should have been implemented.

(Petition, Doc. 1 at 9.)  While Petitioner makes reference to claims raised elsewhere in his Petition (i.e. ineffective assistance and lack of a preliminary hearing), the Court has liberally construed this ground as a asserting a claim based on the jury instructions. (Order 6/12/13, Doc. 4 at 2.)   Petitioner has not made any objection to this characterization.  Respondents have adopted a similar limited view (Answer, Doc. 10 at 16, *et seq.*), and Petitioner has not opposed that.

In particular, Petitioner argues the lack of instructions on a presumption of innocence and reasonable doubt, resulting in his being convicted solely on the basis of his presence at the scene.

Respondents argue that the jury received adequate instruction on the presumption of innocence and reasonable doubt, even in light of the Arizona Supreme Court's decision in *State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995)[6]. Respondents further argue that Petitioner was not entitled to a "reasonable efforts" instruction under *State v. LeBlanc*, 186 Ariz. 497, 924 P.2d 441 (1996), which pertained only to cases involving an opportunity for the jury to convict on a lesser included offense, and no such instructions were requested in this case.  (Answer, Doc. 10 at 17-18.)

**Applicable Law** - "When considering an allegedly erroneous jury instruction in a habeas proceeding, an appellate court first considers whether the error in the challenged instruction, if any, amounted to 'constitutional error.' " *Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 147 (1998)).

---

[6] In *Portillo*, the Arizona Supreme Court mandated the use of a specific form of instruction on reasonable doubt, disapproving the use of the then extant Recommended Arizona Jury Instruction 5.  182 Ariz. at 596, 898 P.2d at 974.

The fact that a jury instruction is allegedly incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  Thus, to the extent that the jury instructions were merely violative of a state requirement under the Arizona courts' decisions in *Portillo* and *LeBlanc* or for failure to utilize state "R.A.J.I. instructions"[7], Plaintiff would not be entitled to habeas relief.

"Although the Constitution does not require jury instructions to contain any specific language, the instructions must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt."  *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004), overruled on other grounds by *Byrd v. Lewis*, 566 F.3d 855 (9th Cir.2009).  The standards applicable to each instruction are different, however.

A state prisoner is denied due process if the instructions to the jury fail to require that the jury find the defendant guilty beyond a reasonable doubt.  *See Sullivan v. Louisiana*, 508 U.S. 275, 277-278 (1993).  This requirement arises out of the intersection between "the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict."  *Id.* at 278.  The failure to provide such instruction is structural error.  *Id.* at 281-282.  Again, however, "[t]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *U.S. v. Ruiz*, 462 F.3d 1082, 1087 (9th Cir. 2006) (quoting *U.S. v. Artero*, 121 F.3d 1256, 1258 (9th Cir.1997).

On the other hand, a court is not always required to give an instruction on the presumption of innocence, although the failure to do so may result in a violation of the Due Process Clause of the Fourteenth Amendment if it results in the denial of a fair trial. *Kentucky v. Whorton*, 441 U.S. 786, 789 (1979).  Thus, the absence of such an instruction is not deemed to be structural error, but requires a finding of harm based upon

---

[7] The Revised Arizona Jury Instructions are standard jury instructions created by the State Bar of Arizona.  They are not approved by the Arizona Supreme Court, and their use is not mandatory.  That court had in the past adopted "Recommended Arizona Jury Instructions," but discontinued doing so in 1996. *See State v. Logan*, 200 Ariz. 564, 566, 20 P.3d 631, 633 (2001).

the totality of circumstances.  *Id.*

**Reasonable Doubt Instruction** – Here, Petitioner was afforded both a reasonable doubt and a presumption of innocence instruction.

With regard to reasonable doubt, the trial court instructed:

> The State has the burden of proving the Defendant guilty beyond a reasonable doubt. This means the State must prove each element of each charge beyond a reasonable doubt. Proof beyond a reasonable doubt is proof, by the evidence, that leaves you firmly convinced of the Defendant's guilt. This standard is higher than the standard for either proof by a preponderance of the evidence or proof by clear and convincing evidence.
> There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

(Exhibit B, Final Jury Instruct. at 7.)  Thus, the jury was instructed with regard to the reasonable doubt requirement.

It is true that the language utilized did not track word-for-word the instruction mandated in *Portillo*.  *See Portillo*, 182 Ariz. at 596, 898 P.2d at 974.[8]  However, as noted above, only constitutional error justifies habeas relief.  Petitioner points to no constitutional defect in the instruction given.  The Ninth Circuit has upheld similar

---

[8] *Portillo* adopted the Federal Judicial Center's Pattern Criminal Jury Instructions, and mandated the following form:

> The state has the burden of proving the defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not or that its truth is highly probable. In criminal cases such as this, the state's proof must be more powerful than that. It must be beyond a reasonable doubt.
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him/her guilty. If, on the other hand, you think there is a real possibility that he/she is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty.

182 Ariz. at 596, 898 P.2d at 974.

language.  *See United States. v. Velasquez*, 980 F.2d 1275, 1278 (9th Cir.1992) ("firmly

convinced"); *United States v. Artero*, 121 F.3d 1256, 1257–59 (9th Cir.1997) ("firmly

convinced," not "every possible doubt," "real possibility," "benefit of the doubt.").

**Presumption of Innocence Instruction** - With regard to the presumption of

innocence, the trial court instructed:

> The law does not require a defendant to prove innocence. Every
> defendant is presumed by law to be innocent. You must start with
> the presumption that the defendant is innocent.

(Exhibit B, Final Jury Instruct. at 6.)   This instruction tracks the Arizona Pattern Jury

Instruction adopted by the State Bar of Arizona. RAJI (Criminal) Standard Criminal 5a

(3rd ed. 2014).

In addition, the trial court instructed:

> The State must prove guilt beyond a reasonable doubt based on the
> evidence. The defendant is not required to produce evidence of any
> kind. The decision on whether to produce any evidence is left to the
> defendant acting with the advice of an attorney. The defendant's
> decision not to produce any evidence is not evidence of guilt.

(Exhibit B, Final Jury Instruct. at 5-6.)

Again, Petitioner points to no defect in these presumption of innocence

instruction.

Moreover, Petitioner fails to make any showing that any defect in the instruction

denied him a fair trial.

In *Taylor*, the Supreme Court found a denial of due process from the complete

lack of a presumption of innocence instruction, but only did so based upon the "Spartan"

instructions giver overall, a closing argument by the prosecution based on facts not in

evidence and a call to consider the defendant's status as a defendant as evidence of guilt,

and the weakness of the evidence.  436 U.S. at 486-488.  Here, Petitioner argues that the

jury was subjected to "evidence that misleads them to believe that releasing this prisoner

would mean releasing a dangerous person," and suggests that the jury was led to believe

that his "mere presence at a crime scene" established his guilt.

Petitioner points to nothing in the record to support any misleading evidence

33

about the danger posed by Petitioner.  That the undisputed evidence of Petitioner's conduct, namely his stalking, assault and robbery of an elderly victim, and ensuing assault on a police officer, might lead to the conclusion that he was dangerous, that does not mean the evidence was improper.  While the jury was obligated to begin with the presumption of evidence, they were not obligated to ignore evidence which overcame it.

Similarly, Petitioner points to nothing to show that the jury was led to convict based solely on his presence at the scene. He was not merely some happenstance bystander.   To the contrary, the prosecution presented credible evidence from the victim and/or numerous police officers that Petitioner followed the victim to her home, entered the home, assaulted the victim, took her purse, and was captured, the victim's purse in hand, as he attempted to flee the home, while still on the property, and assaulted the police officer when he was apprehended.

Moreover, here (in addition to the presumption of innocence and reasonable doubt instructions) the trial court had painstakingly instructed the jury on, *inter alia*, their duty to decide the case on the evidence (Exhibit B, Final Jury Instruct. at 4), limited solely to the evidence produced in court (*id.* at 5), that the obligation to produce evidence was solely the prosecution's and that proof beyond a reasonable doubt was required (*id.* at 5-6), and that the officers' testimony was not entitled to special credence (*id.* at 9). Further, the Court instructed the jury on the required proof for each of the charges.  (*Id.* at 10, *et seq.*)

In sum, Petitioner points to no portion of the record which would establish that he was denied a fair trial as a result of any defect in the presumption of innocence instruction.

Petitioner's Ground Four is plainly without merit, and must be denied.

## G.  SUMMARY

Based upon the foregoing, the undersigned concludes: (1) that Ground One asserts a federal claim, but is without merit; (2) that Grounds Two and Three adequately state

claims; and (3) that notwithstanding any purported procedural default, Grounds Two, Three and Four are plainly without merit, and thus should be denied on the merits.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set

forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed April 1, 2013 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant

/ /

/ /

/ /

36

to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: June 20, 2014

13-0644r RR 14 05 21 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge